CASE 92—ACTION BY JUNE MONEHAN BY NEXT FRIEND AGAINST SOUTH
COVINGTON AND CIN. STREET RY. CO. FOR PERSONAL INJURIES.—
MARCH 3.

# Monehan v. S. Covington & Cin. St. Ry. Co.

APPEAL FROM CAMPBELL CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS.    AFFIRMED.

STREET RAILWAYS—TRESPASSERS ON CARS—CHILDREN—DUTY TO DIS-
COVER—EVIDENCE.

Held:   1. A child, though *non sui juris*, riding on the step of the
rear platform of a street car, on the side which is not in use,
and across which is a closed gate, is a trespasser, to whom the
street railroad and those in charge of the car owe no duty of
discovering his peril.

2. In an action to recover for injury to a child trespassing on the
rear step of a street railway car, testimony that the point where
plaintiff got on the car was in a thickly settled portion of the
city, and that many children congregated thereabouts, and had
often trespassed on defendant's cars theretofore with the knowl-
edge of the employes, was properly excluded.

C. L. RAISIN, JR., GEO. H. AHLEVING, AND A. M. CALDWELL,
ATTORNEYS FOR APPELLANT.

There are three acts of negligence complained of in this ac-
tion:

1. That the conductor of the street car was negligent in start-
ing the car while the infant plaintiff was standing on the step
thereof, without warning the boy and without making any effort
to protect him in his perilous position.

2. That the conductor saw, or could by ordinary care have
seen the boy's peril after the car was put in motion, and could
by the exercise of ordinary care have stopped the car in time
to save him from injury.

3. That the step of the car was not properly protected, and
the gate as placed and constructed, was not a proper and safe
appliance for the purpose for which it was used by appellee.

Monehan v. South Covington & Cin. St. Ry. Co.

4. We also insist that independent of whether the conductor actually saw the boy or not before he started the car, if by ordinary care he could have seen him, it was his duty to see him, and not start the car until he made him get off the step.

5. The court erred in refusing to permit plaintiff to prove before the jury that the place where the car was standing at the time the boy got on the car was a thickly populated neighborhood, and that boys were constantly in the habit of jumping on the steps of the cars at that point and this fact was known to defendant's agents and employes.

## AUTHORITIES CITED.

L. & N. R. R. Co. v. Howard, 82 Ky., 212; Shelby v. C. N. O. & T. P. Co., 85 Ky., 224; Adams v. Craycroft, 1 R., 330; Fugate v. City of Somerset, 16 R., 807; Thornton v. L. & N. R. R. Co., 22 R., 778; Vanarsdale's Admr. v. L. & N. R. R. Co., 23 R., 1666; L. & N. R. R. Co. v. Popp, 96 Ky., 99.

L. J. CRAWFORD, FOR APPELLEE.

## PROPOSITIONS ADVANCED AND AUTHORITIES CITED.

1. The first verdict and judgment should stand, because, (a) Petition states no cause of action.  (b) Proof does not tend to support a cause of action.

2. Motion to strike from amended petition should have been granted.

3. Maintaining of car steps not negligence by reason of being an invitation to children.

4. Appellee owed no duty to appellant unless it knew of his perilous position in time, etc.  L. & N. v. Thornton, 22 R., 778; L. & N. R. R. Co. v. Webb, 18 Ky., 258.

5. Evidence on second trial does not tend in any degree toward supporting a cause of action.

OPINION OF THE COURT BY JUDGE BARKER—AFFIRMING.

The appellee is a corporation operating an electric railway over the streets of Newport, Ky.   The appellant at the time of the injury of which he complains, was between six and seven years of age.   At the intersection of Eleventh and Patterson streets, in the city named, one of appellee's

cars had stopped for the purpose of receiving and discharging passengers. On the rear platform of the car were steps, so arranged that passengers could get on or off from either side; but appellee only permitted this to be done on one side at a time, and, for the purpose of preventing ingress and egress to and from the car on more than one side, it had a small iron wicket gate across the side not in use. This was movable, so that it could be transferred from one side to the other, as the necessities of the case required. Appellant, and a companion about the same age, while the car was standing at the intersection mentioned, got upon the lower step of the side of the rear platform which was not being used for the purpose of taking on or letting off passengers, and, taking hold of the iron gate with their hands, stood on the step until the car started. The car seems to have soon attained a rapid rate of speed, and appellant was jolted off, falling into the street, and receiving injuries about the head, to recover damages for which this action was instituted. Upon the trial of the case, after the close of appellant's (plaintiff's) testimony, the court, on motion, awarded appellee (defendant) a peremptory instruction to the jury to find for it, which was done; and of this, appellant is here complaining.

The question involved is whether or not, under appellant's own testimony, appellee owed him any duty other than to avoid injuring him, if that could have been done, by the exercise of ordinary care, after his danger was discovered. It is not pretended that appellant was a passenger upon the car, nor can it be denied that he was a trespasser. The evidence does not show that the conductor, who was appellee's agent in charge of the car, saw him; but it is contended that the officer, by the exercise of ordinary diligence, could

and should have seen him before he received his injury, and have prevented it, and this question, he claims, should have been submitted to the jury. Upon this claim arises the crucial question of this case—whether or not appellee owed appellant any active duty in order to discover his peril. If so, then the peremptory instruction should not have been granted. In favor of this proposition, appellant's counsel cites two cases: L. & N. R. Co. v. Thornton (22 R., 778), 58 S. W., 796, and Vanarsdall's Adm'r v. L. & N. R. Co. (23 R., 1666), 65 S. W. 858. In the first of these, the court said: "The theory upon which this case is based, and the recovery had— for it is carried into the instruction given *supra*—is that appellant owed to appellee a duty to prevent him getting off the moving train after those agents knew or had reasonable grounds to believe he was about to jump from the moving train. We are of opinion that the instruction, *supra* given is erroneous. There can be no negligence in failing to do unless there was a duty to do. Appellee, a boy seventeen years of age, and of reasonable intelligence, as shown by his testimony, is on a freight train by invitation of the fireman. He is not a passenger. The appellant owed him no contract duty. The train is not engaged in carrying passengers. Under these circumstances, it is clear that appellée was a mere licensee, if not a trespasser, and appellant owed him no duty, unless his danger was discovered in time to have prevented an injury by some agent of appellant. Dalton's Adm'r v. L. & N. R. Co. (22 R., 97), 56 S. W., 657, and cases cited." In the second of these cases, the facts were these: The decedent, Mary Vanarsdall, was a little girl, 12 years of age. At the time of the accident she was walking over one of appellee's railroad bridges. Before she could get off, she was run over and killed. In the opinion this court said: "It

must be conceded that the intestate was a technical tres-
passer, or, in other words, she had no lawful right to use the
bridge as a passway, and that appellee was under no obli-
gations to look out to see if she was upon the bridge. But
it is also a well-settled rule of law that if the defendant, its
agents or employes in charge of the train, discovered the peril
or danger of the intestate, it was its duty to use all reason-
able efforts to avoid injuring her, and, if they failed so to do,
the plaintiff would be entitled to recovery. If, however, the
defendant used all reasonable efforts to avoid injury after
discovering her peril, the verdict should have been for the
defendant." We are not able to recall any opinion of this
court wherein the opposite principle to that contended for
by appellant has been more clearly or definitely decided than
in these two cases.

The question of appellant's infancy is immaterial, until it
has been established that appellee owed him an active duty,
as opposed to the passive duty of not injuring him after his
peril was discovered. An infant of tender years may not be
able to be guilty of contributory negligence, and in that res-
pect his position is superior to that of one who has reached
years of discretion. But contributory negligence presup-
poses the existence of negligence, and never becomes a factor
in the problem until the defendant's duty, and his breach of
it, have been established. If the defendant owed the appel-
lant no duty, then the question of his infancy is immaterial.
Appellant was a mere trespasser upon the rear steps
of appellee's car, and those in charge of it did
not owe him any duty of discovering his peril. In
the case of Jackson's Adm'r v. L. & N. R. Co. (20 R., 309),
46 S. W., 5, the decedent was a boy seven years of age, who
was trespassing in the yard of the railroad corporation, where

he was run over and killed. It was held that the corporation owed the decedent no active duty, and the judgment of the lower court, awarding the peremptory instruction, was affirmed. In the case of Brown's Adm'r v. L. & N. R. Co., 97 Ky., 228, 17 R., 145; 30 S. W., 639, the doctrine that the corporation owed a trespasser upon its tracks no lookout duty is fully maintained. See, also, Kentucky Central Railroad Co. v. Gastineau's Adm'r, 83 Ky., 119, 7 R., 3; Conley's Adm'r v. Cincinnati Railroad Co., 89 Ky., 402, 11 R., 602, 12 S. W., 764; McDermott v. Kentucky Central Railroad Co., 93 Ky., 408, 14 R., 437, 20 S. W., 380; and L. & N. R. R. Co. v. Hunt, 11 R., 825, 13 S. W., 275.

We do not think the court erred in excluding the proffered testimony that the intersection of Eleventh and Patterson streets was in a thickly settled portion af the city of Newport; that many children congregated thereabouts, and theretofore they had often trespassed upon appellee's cars, with the knowledge of the employes in charge thereof; and the cases of Shelby's Adm'r v. Cincinnati New Orleans & Texas Pacific Railroad Co., 85 Ky., 224, 3 S. W., 157, and Louisville & Nashville Railroad Co. v. Popp, 96 Ky., 99 (16 R., 369), 27 S. W., 992, do not support this proposition. In the first of these cases, the infant decedent was killed by a backing car while he was on the defendant's switch, where he had the right to be; and the court found, as a matter of fact, that he was not a trespasser, but, on the contrary, said: "In our opinion, therefore, he had a lawful right to go upon the track at that place and the company owed to him a duty of active vigilance." In the second case there is some general language which seems to give color to appellant's position with reference to the admissibility of this evidence, but an analysis of the opinion shows that the servants of the defendant cor-

poration knew the appellee and his companions were in its switchyard and about its cars; and the case, after all, was made to turn upon the knowledge that the injured boy and his companions were in and about the cars, by the backing of which without notice the plaintiff was injured.    In the action of Louisville & Nashville Railroad Co. v. Webb, 99 Ky., 335 (18 R., 258), 35 S. W., 1120, on the subject of testimony of this character it was said: "Over the objections of the counsel for appellant, testimony was admitted to prove what was said by the conductor to the boys, including the infant appellee, about helping to take freight from the train and riding from the tank on days previous to the day on which the accident happened.    The testimony ought to have been rejected.    The case was between the infant appellee and appellant, and the subject of investigation was what occurred on the day the injury was inflicted, and what occurred on previous days had no necessary connection with, and was in no sense a part of, the transactions of that day.    For this reason, also, the court properly refused to allow proof to be made in behalf of the appellee of what it was alleged the conductor and trainmen said to the boys on the occasion before that day about swinging on the ladders attached to the side of the car, and telling them to do this in order to learn to be 'hoppers,' and the like, and that the boys were in the habit of practicing in that way on previous occasions when they rode to the tank."    This. we think, states the sound rule on this subject.

Appellee, although it was a common carrier of passengers, owed the infant appellant no different duty than was owed him by the owner of any other vehicle plying the streets of Newport.    As he had a right, in common with the general public, to use the public highways, appellee, in common with

all other owners of vehicles, owed him the active duty of exercising ordinary diligence not to run over him; but neither it nor they were under any duty of anticipating his trespassing on the rear end of the vehicles while they were being driven or propelled along the streets. Suppose a private carriage is being driven along the street; must the driver maintain a lookout to see that small boys are not stealing a ride by climbing up in the rear of the vehicle, and thereby placing themselves in positions of danger? Surely not, and yet it will be difficult to draw a distinction between the case at bar and that supposed. The fact that there was a conductor on appellee's car would not alter the case. The conductor's duty is primarily to attend to his passengers, and not to look out for trespassers; and, while the presence of the conductor would necessarily increase the chances of the actual discovery of the infantile trespasser, it would not add the duty of an active vigilance to make the discovery of his presence and danger.

Judgment affirmed.