# Jones v. L. & N. R. Co. et al.

April 18, 1944.

G. G. Rawlings and J. L. Williams for appellant.

H. L. Bryant, J. C. Baker and H. T. Lively for appellee L. & N. R. Co.

J. B. Carter and Sampson & Sampson for appellee Tway Coal Co.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Grant Jones, father of Billie Jones, a seven and half year old boy, sued appellees for damages on ac-

count of the boy's death, occasioned by his falling or jumping from a coal car, property of the railroad company, while it was upon a private siding on coal company's premises. Appeal is from a judgment for appellees under instruction of the court.

The proof shows that the railroad employees, as was the custom, on Friday August 14, 1942, the day before the accident, set in several cars on the siding which were taken by the coal company by means of cable to be dropped down under the tipple for loading. This car was so handled by employees of the coal company and when it came under the tipple a wheel was spragged until the employee could climb upon the car and tighten the brake. When this was done the wedge was removed and the coal company's employees proceeded to load, filling the car nearly half full, leaving it for further loading when work was resumed on Monday morning.

The petition charged that the railroad company "placed on the side track of the coal company, a gondola with brakes so out of repair as not to secure it when placed on a grade," and that due to the defective brake the car "got loose and ran over the deceased." The negligence against the coal company consisted in its employees knowing of the defective brake, "leaving it in that condition."

An amendment alleged that the defendants knew that it was a custom of the deceased and other children who lived near to be attracted by the gondolas, and to play around and upon them. The railroad company denied all allegations of the petitions except that the boy met his death in an accident "with a railroad car at the tipple of the coal company," and that the car was partially loaded. It affirmatively charged that the accident was due to the negligence of the parents, who lived near by in permitting the boy to go upon the premises.

It then plead specifically that when its employees set the car on the siding it was in the exclusive control of the coal company. The coal company denied and plead the negligence of the boy and his parents. Replies completed the issues. Proof showed that the railroad company placed its cars on the siding on the property of the coal company, and that all movements thereafter were by the coal company until after the loaded

cars moved down the siding to be taken out. The proof fails to show that the brake on this car was defective to such an extent that it would not hold the car. The fact that the car was shunted under the tipple, the brakes set, the car half way loaded, and so remained for twenty-four hours, shows that the brake was sufficient to hold the car.

There is a meager description of the brake. It was not the wheel brake style but worked by a lever on the end of and outside the car. The working of this lever up and down winds the brake chain around a rod which throws the brake shoe in position. When tightened a ratchet plug would hold the rod tight. When this ratchet was tripped the brake was released. The only possible defect undertaken to be shown was that the ratchet tripped at a slight touch, and this (speculatively) may have been the cause of the starting of the car when the deceased climbed out of it. We used the word "speculatively" because no one knows just what caused the car to move.

The eleven year old sister was the only person nearby at the time of the accident. About 4:30 p. m. the two went over to the tipple to get sand from a pile near the tipple. She said that the brother said he was going on the cars "to be excused." "He went up the ladder on the side next to the creek and went across and the car started out; I don't know whether he fell off or jumped off." She said he had been up there "a right smart while" before the car started to move, and that she did not see him "get hold of anything." She was on the ground and could not see the boy. She said the superintendent passed while they were around the spot and said, "Aint you all fraid you will get dirty?" but did not tell them to go away. However, she said they were both on the steps down next to the creek, away from the car and tipple "fixing to make a play house."

While several witnesses testified that they arrived at the spot a few minutes after the accident none of them describe how the car injured him; it is surmised that he either fell or jumped when the car began to move, and in the direction it was moving and was crushed. Much of the proof went toward showing that it was a custom of children to play around the tipple, without interference by the employees of the company. There was also considerable proof undertaking to show that the brake on

the gondola was defective. This proof failed, except to the extent noted.

It was under this substantially stated proof that the court held a failure to show negligence. The court analyzed the evidence in relation to the coal company's activities and found that the proof showed that the brake would and did hold. He surmised, as we do, that the boy must have "touched some instrument that let the brake loose," and he then fell or jumped from the car. It may be surmised also that if any movement of the boy released the brake it was while he was not inside the car.

That there was no actionable negligence on the part of the railroad company is clearly shown by reference to: Logan v. Cincinnati, N. O. & T. P. R. Co., 139 Ky. 202, 129 S. W. 575; Louisville & N. R. Co. v. Freppon, 134 Ky. 650, 121 S. W. 454; Dunn, by, etc., v. Central State Hospital, 197 Ky. 807, 248 S. W. 216. These authorities hold that even if there had been any negligence shown it was that created by independent intervening cause. As we read appellant's brief it is not argued that there was actionable negligence on the part of the railroad company.

Appellant plead and undertook to prove facts which made the basis of coal company's liability its maintenance of an attractive nuisance. At the outset it must not be overlooked that the testimony of the little girl is to the effect that they went to the spot, not to play on the coal car, but to build a play house from sand taken from a pile near the tipple, and were building the play house on the steps next to the creek. The allurement here shown was not the coal car, but the sand pile near the tipple. The boy was not attracted by the coal car, nor by the working of a brake or its possibility of easy release. See Dennis' Adm'r v. Kentucky & West Virginia Power Co., 258 Ky. 106, 79 S. W. (2d) 377.

We have held that a railroad car is not in itself an attractive nuisance. Smith v. Hines, Director General, 212 Ky. 30, 278 S. W. 142, 45 A. L. R. 980. But the theory of appellant is that the brake, or the ratchet which released the brake, was the alluring nuisance. The case differs from Louisville & N. R. Co. v. Vaughn, 292 Ky. 120, 166 S. W. (2d) 43, where the one question was whether or not the children, one of whom was injured,

unlocked a turntable, an instrumentality which we have consistently held to be an attractive nuisance.

The turntable doctrine was adopted from the English courts in the case of Sioux City & P. R. Co. v. Stout, 17 Wall. 657, 21 L. Ed. 745, many years ago, with a tendency of some courts to extend the doctrine, and others (ours being one) to limit its application, or others to do away with it entirely, holding to the principle that an owner owes no further duty to a trespasser or licensee (two terms with very little reasonable distinction) not to injure him wantonly; to avoid the injury by the use of and means at command after discovery of peril. United Zinc and Chemical Co. v. Britt, 258 U. S. 268, 42 S. Ct. 299, 66 L. Ed. 615, 36 A. L. R. 28; Carr v. Oregon-W. R. & N. Co., 123 Or. 259, 261 P. 899, 60 A. L. R. 1434.

It would carry the doctrine too far here, and would constitute the company no less than an insurer, to hold the brake or ratchet, whether defective or in prime condition, an attractive nuisance in contemplation of any case we have been able to observe. That the child here was, to say the least, a licensee cannot be questioned. Trespassing children occupy the same attitude as a trespassing adult, except for the special liability imposed under the attractive nuisance theory, and the rule is that the owner is only liable for negligence after discovering his peril. Meredith v. Fehr, 262 Ky. 648, 90 S. W. (2d) 1021.

It would also go to the extreme to say that the brake or the ratchet, even though the latter may have been defective in that it released readily, was known or ought to have been known to the owner to have been an attractive nuisance, or that it was dangerous to children as an alluring instrumentality. That knowledge of the alluring or inherent dangerous quality is one element upon which liability is founded. See Ice Delivery Co. v. Thomas, 290 Ky. 230, 160 S. W. (2d) 605, wherein we quoted from Mayfield Water & Light Co. v. Webb's Adm'r, 129 Ky. 395, 111 S. W. 712, 713, 18 L. R. A., N. S., 179, 130 Am. St. Rep. 469: "The tendency of the more recent cases is to restrict, rather than enlarge, the application of the principle laid down in what are called Turntable cases, and to hold that the defendant is not liable unless he knows, or ought in the exercise of ordinary care to know, that his structure is alluring to children and endangers

them.'' No person in the exercise of ordinary care could or would be held to anticipate that a child would be attracted by a car or brake. Nor could the company anticipate that in case the car started the boy would either jump or fall off.

We find several cases relating to railroad cars which establish the principle that neither a car nor such appliances as are necessary in its operation, so located as not to attract children, do not come under the turntable rule. Colby v. Chicago Junction R. Co., 216 Ill. App. 315; Central Branch Union Pac. R. Co. v. Henigh, 23 Kan. 347, 33 Am. Rep. 167; Flaherty v. Metro Stations, 202 App. Div. 583, 196 N. Y. S. 2, affirmed without opinion in 235 N. Y. 605, 139 N. E. 753.

Under the proof adduced, and the decisions of our own and other courts, we are compelled to hold that the court was not in error in directing a verdict favorable to both appellees, hence the judgment is affirmed.